## 31311. WIGGINS v. THE STATE.

DECIDED OCTOBER 17, 1946.

*D. C. Sapp, Marshall Ewing, Ward Whelchel,* for plaintiff in error.

*John W. Bennett, Solicitor-General,* contra.

BROYLES, C. J. Mary Wiggins was indicted for assault with intent to murder. The indictment alleged that, in Coffee County, Georgia, on September 8, 1945, she did unlawfully assault and strike Lankford Brantley with a glass liquor bottle and with the broken neck of said bottle, said instruments being then and there weapons likely to produce death, did beat, cut, and strike said Brantley in his face and neck, with malice aforethought and with the intent then and there to kill him. Upon the trial, the defendant was convicted of the offense charged; her motion for a new trial was overruled, and that judgment is assigned as error.

The evidence authorized the jury to find the following facts: On the date alleged in the indictment, the defendant (a negro woman) and Lankford Brantley (a 17-year-old white boy) were walking in opposite directions on a crowded street in the City of Douglas, and the defendant bumped into Brantley. Brantley told her to watch out where she was going, and she replied: "Who in hell are you talking to?" and he said, "You." The defendant then moved up very close to Brantley, and he pushed her away with his hand "to get her face out of my face." Then the defendant struck Brantley on his head with a glass bottle containing whisky, thereby bruising his head and breaking the bottle. There was left in her hand the neck of the broken bottle, and she grabbed Brantley and struck him several times on his neck with the neck of the bottle, thereby producing cuts and wounds on his neck and causing him to lose considerable blood. Brantley fell to the ground, with the defendant on top of him, and she continued to cut him with the neck of the bottle until she was forcibly pulled off him by several bystanders. When the defendant was arrested, she told the policeman: "There's two or three of them tried to get on me, and you know the Wiggins. They ain't going to take it. I don't start nothing, but I can end it. They was trying to kill me and I tried to kill him." The neck of the whisky bottle, the clothes worn by Brantley when he was cut by the defendant, and his broken eyeglasses were introduced in evidence. The undisputed testimony disclosed that Brantley could see only out of one eye and always wore glasses, and that his glasses were broken during the struggle with the defendant; and further showed that Brantley had no weapon of any kind in his hands or on his person during his trouble with the defendant, and that the only weapons used were the whisky bottle and its broken neck employed by the defendant.

None of the above-stated evidence was contradicted by any other evidence in the case. However, the defendant in her statement to the jury, while admitting that she struck Brantley with the whisky bottle, stated that he had hit her first and had thrown her down on the ground; but in that statement to the jury she failed to deny that she told a policeman, just after the trouble, that she had "tried to kill" Brantley when she hit him with the bottle. The evidence, direct and circumstantial, amply authorized the verdict

returned, and the general grounds of the motion for a new trial are without merit.

Special grounds 1 to 8, inclusive, assign as error the failure of the court to instruct the jury upon the law of mutual combat and the law of voluntary manslaughter as related to mutual combat. In our opinion, mutual combat and voluntary manslaughter as related to mutual combat were not involved in this case. Conceding that the defendant and Brantley were engaged in a fight, it was a mere fist fight, and the assault, if any, made upon the defendant by Brantley was a very slight one (a mere pushing her away by his hand from his face), and not one that would cause a reasonable person to fear that her life was in danger or that a felony was about to be committed upon her. The law says that, to constitute a mutual combat, *both* parties must have the desire and intent to fight, and usually must be armed with weapons likely to produce death. Brantley had no weapon whatever, and the undisputed evidence demanded a finding that he had no 'desire or intention to engage in a mutual combat with the defendant. Furthermore, the undisputed evidence amply authorized a finding that the defendant's assault was maliciously made and with the specific intent to kill and murder Brantley. In *Knight* v. *State*, 73 *Ga. App.* 556 (37 S. E. 2d, 435), this court said: "The present facts did not involve the theory of mutual combat, under the contemplation of the law dealing with that question. A mere fist fight does not involve the law of mutual combat. *Watson* v. *State*, 66 *Ga. App.* 242 (17 S. E. 2d, 559). In the instant case until the mortal blow was struck there was nothing more than a mutual fist fight." Moreover, the failure to charge on mutual combat and voluntary manslaughter was not prejudicial to the defendant, since the court did instruct the jury upon the law of assault and battery, and under this charge the jury could have found her guilty of that misdemeanor offense, if the evidence or the defendant's statement to the jury had authorized such a finding. *Duhart* v. *State*, 18 *Ga. App.* 287 (89 S. E. 343); *Chandler* v. *State*, 54 *Ga. App.* 334 (3) (187 S. E. 856). Special grounds 1 to 8, inclusive, fail, for any reason therein assigned, to show cause for a reversal of the judgment.

Special ground 9 alleges that the evidence and the statement of the defendant tended to show a mutual combat, and that the state-

ment of the defendant showed that her sole defense was that she was acting in self-defense while engaged in mutual combat. *Based upon those allegations,* the ground assigns error on the failure of the court to charge upon the defendant's sole defense. This assignment of error is based upon the premise that the evidence and the defendant's statement tended to show that she and Brantley were engaged in mutual combat when she assaulted and cut him. In view of our foregoing rulings that, under the evidence and the defendant's statement, neither voluntary manslaughter nor mutual combat was involved in the case, and our further ruling, now made, that her statement to the jury did not tend to show that she assaulted and beat Brantley with a deadly weapon in *self-defense,* the ground is without merit.

Special ground 10 complains' of the following excerpt from the charge: "An assault with intent to murder is an unlawful and malicious assault with a weapon that, as used, is likely to kill, and with the intent and purpose on the part of the assailant to kill the person assaulted." The charge is assigned as error because: (1) It failed to instruct the jury that, in order to justify a conviction for an assault with intent to murder, the assault must have been made "on a human being, in the peace of the State, with malice aforethought." (2) It failed to instruct the jury that to warrant a conviction for an assault with intent to murder, the assault must have been made under such circumstances that, had death ensued to the party assaulted, the offense would have been murder. The ground is without merit.

Special ground 11 complains of the same excerpt from the charge that is complained of in ground 10. Here the charge is assigned as error because it failed to state that, in order to warrant a conviction for an assault with intent to murder, the assault must have been shown to have been without justification and without any circumstances of mitigation. We see no merit in this ground. Certainly the undisputed evidence neither showed nor tended to show any justification for the defendant's deadly and continued assault upon Brantley, who was unarmed with any weapon except his hands. Nor did the evidence show or tend to show any mitigating circumstances. Did the defendant's statement to the jury tend to show justification or mitigating circumstances? We think not. In that statement she said that Brantley had hit her two

licks before she hit him with the bottle of whisky, "and then I turned to run and they ganged me and throwed me and him both down, and I had never got loose when the law got there." The undisputed evidence disclosed that Brantley had no weapon when assaulted, and this is not denied in the defendant's statement. Also the undisputed evidence showed that, after the defendant had broken the whisky bottle on Brantley's head, she grabbed him and they fell to the ground, she being on top of him, and that she continued to strike and cut him with the neck of the bottle until she was pulled off him by bystanders. That evidence was not directly contradicted by the defendant's statement.

Moreover, there was no request for a charge upon the law of justification and mitigation, and the court did charge as follows: "The defendant contends that she is not guilty. If you believe the contentions of the defendant, or if you do not believe her guilty beyond a reasonable doubt, it would be your duty to acquit her, and in that event the form of your verdict would be, 'We, the jury, find the defendant not guilty.'"

Special ground 12 is expressly abandoned in the brief of counsel for the movant.

The denial of a new trial was not error for any reason assigned.

*Judgment affirmed. Gardner, J., concurs. MacIntyre, J., concurs specially.*

MacIntyre, J., concurring specially. I do not think that the evidence shows a mutual intent to fight, and I concur in the judgment of affirmance, but do not concur in all that was said relative to what constitutes mutual combat. See my dissent in *Knight* v. *State, 73 Ga. App. 556.*